IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MILTON J. R.,

                              Plaintiff,                    Civil Action No.
                                                               5:19-CV-0315 (DEP)

          v.

ANDREW M. SAUL, Commissioner of Social
Security,[1]

                              Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

LEGAL AID SOCIETY OF MID-NEW     ELIZABETH V. KRUPAR, ESQ.
YORK, INC.
Syracuse Office
221 South Warren Street, Suite 310
Syracuse, NY 13202

---

[1]     Plaintiff's complaint named Nancy A. Berryhill, in her capacity as the Acting
Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew Saul
took office as Social Security Commissioner. He has therefore been substituted as the
named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil
Procedure, and no further action is required in order to effectuate this change. *See* 42
U.S.C. § 405(g).

<u>FOR DEFENDANT</u>

HON. GRANT C. JAQUITH          DANIEL TARABELLI, ESQ.
United States Attorney              Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral

argument was heard in connection with those motions on June 3, 2020,

during a telephone conference conducted on the record. At the close of

argument I issued a bench decision in which, after applying the requisite

deferential review standard, I found that the Commissioner's determination

resulted from the application of proper legal principles and is supported by

substantial evidence, providing further detail regarding my reasoning and

_____

[2]      This matter, which is before me on consent of the parties pursuant to 28 U.S.C.
§ 636(c), has been treated in accordance with the procedures set forth in General
Order No. 18. Under that General Order once issue has been joined, an action such as
this is considered procedurally, as if cross-motions for judgment on the pleadings had
been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)      Defendant's motion for judgment on the pleadings is GRANTED.

2)      The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)      The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:      June 16, 2020
            Syracuse, NY

3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
MILTON JOSE R.,

                        Plaintiff,

vs.                                      5:19-CV-315

ANDREW SAUL, Commissioner
of Social Security,

                        Defendant.

-----------------------------------------------------x

                 *DECISION* - June 3, 2020

      James Hanley Federal Building, Syracuse, New York

                HONORABLE DAVID E. PEEBLES

        United States Magistrate Judge, Presiding


                 <u>APPEARANCES</u>  (by telephone)

For Plaintiff:    LEGAL AID SOCIETY OF MID NEW YORK, INC.
                  221 South Warren Street
                  Syracuse, NY 13202
                    BY:  ELIZABETH V. KRUPAR, ESQ.

For Defendant:    SOCIAL SECURITY ADMINISTRATION
                  Office of the General Counsel
                  15 Sudbury Street
                  Boston, MA 02203
                    BY:  DANIEL STICE TARABELLI, ESQ.




                 *Eileen McDonough, RPR, CRR*
              *Official United States Court Reporter*
                       *P.O. Box 7367*
                  *Syracuse, New York 13261*
                       *(315)234-8546*

*Decision - 6/3/2020 - 19-cv-315*                    2

1          THE COURT:  Thank you.  Let me compliment both

2     counsel on excellent written and verbal presentations.  I

3     enjoyed working with you and this presents an interesting

4     case with several interesting issues.

5          Plaintiff commenced this proceeding pursuant to 42,

6     United States Code, Sections 405(g) and 1383(c)(3) to

7     challenge an adverse determination by the Commissioner of

8     Social Security finding that plaintiff was not disabled at

9     the relevant times and, therefore, ineligible for the

10    benefits for which he applied.  The background is as follows.

11         Plaintiff was born in November of 1980.  He is

12    currently 39 years of age.  He was 33 years old at the time

13    of the alleged onset of his disability in June of 2014.

14    Plaintiff stands between 5-foot-4 and 5-foot-5 inches in

15    height, and at various times has weighed between 177 and

16    197 pounds.

17         Plaintiff has a ninth grade education which he

18    achieved in Puerto Rico in Spanish.  He does not speak or

19    write or understand English.  Plaintiff lives in a

20    second-floor apartment with his wife and three children, who

21    in September of 2017 were aged five, seven and eight.  He

22    resides in Syracuse, New York, where he moved from Puerto

23    Rico in 2014.

24         Plaintiff testified he is ambidextrous during the

25    hearing, although at various times he suggested in his

1  function report, for example, at Administrative Transcript

2  332, that he is left-handed.

3        Plaintiff last worked before his move from Puerto

4  Rico to New York in June of 2014.  He was a production line

5  worker at a mattress factory from either 2007 or 2008 until

6  June of 2014.  At page 344 of the Administrative Transcript

7  he described that job as requiring lifting of 50 pounds

8  frequently and up to 100 pounds occasionally and walking all

9  day.  Prior to that time plaintiff worked in a food warehouse

10  from somewhere around 1999 until 2005 in two different

11  positions, and as a stocker in a grocery store from

12  October 2004 to August 2005.  He also worked in plastic

13  production in the late 1990s.

14        Plaintiff physically has a right foot impairment

15  that stems from a motor vehicle accident.  It is unclear

16  precisely when the accident occurred, but it appears it was

17  sometime in the 1999 to 2000 time frame.  The injury has

18  resulted in three surgeries.  The last occurred in 2002 with

19  inclusion of three screws and a fusion.  Plaintiff has

20  residual issues, including osteoarthritis and degenerative

21  changes.  An X-ray that was taken in October of 2014, among

22  other things, reflected significant degenerative change

23  junction between the midfoot and hindfoot, some mild to

24  moderate degenerative change of the mid to forefoot

25  articulations, and mild degenerative change first MTP joint.

1        The plaintiff also suffers from spurring and

2   osteophytes.  In addition, plaintiff has at various times

3   complained of knee and ankle pain, left shoulder pain, lumbar

4   back pain, hyperlipidemia, obesity, hypertension, a history

5   of epilepsy, and obstructive sleep apnea.

6        Testing of plaintiff's spine in March of 2017

7   reflected degenerative changes of the lower lumbar facet

8   joints.  That's at page 541 of the Administrative Transcript.

9   Plaintiff has been prescribed and uses a cane to ambulate,

10   although medical records do not reflect that he consistently

11   used it early on.  Plaintiff has been prescribed various

12   medications over time, including hydrocodone, oxycodone,

13   Gabapentin, Cymbalta, Dilantin, Mobic, Baclofen, Lidocaine

14   Patch, Depakote, Percocet, Topamax, Celebrex, and Tramadol.

15        Plaintiff has a significant range of activities of

16   daily living, according to his hearing testimony and Exhibit

17   3E.  He can shower, dress, make his bed, wash dishes, cook

18   some.  He drives, shops, watches his children, watches

19   television, attends school activities, and listens to the

20   radio.  The plaintiff also smokes cigarettes.  That's at

21   page 473 of the Administrative Transcript.

22        Procedurally, plaintiff filed applications for

23   Title II and Title XVI benefits under the Social Security Act

24   on August 26, 2014, alleging an onset date of June 27, 2014.

25   Interestingly, plaintiff made a previous application for

1    disability benefits in 2007, as reflected at page 93 of the

2    Administrative Transcript.  That, of course, was prior to his

3    work at the mattress factory through June of 2014.

4           In his pending application, plaintiff claimed

5    disability based on epilepsy, right foot operation with three

6    screws, extraction of right hip for foot fusion, arthritis,

7    and acid reflux.  That's at page 319.  During the hearing

8    plaintiff stated that he is unable to work due to his right

9    foot, which limits his standing, his lower back, sleep

10   deprivation, and epilepsy.  That appears at page 75 and 76 of

11   the Administrative Transcript.

12          A hearing was conducted on September 7, 2017 by

13   Administrative Law Judge Bruce S. Fein with the assistance of

14   an interpreter to address plaintiff's application for

15   benefits.  On September 25, 2017 ALJ Fein issued an adverse

16   determination.  That became a final determination of the

17   Agency on September 20, 2018, when the Social Security

18   Administration Appeals Council denied plaintiff's request for

19   review.

20          This action was commenced on March 11, 2019.  It is

21   timely due to the fact that the Social Security

22   Administration Appeals Council extended plaintiff's time to

23   file suit.

24          In his decision ALJ Fein applied the familiar

25   five-step test for determining disability.  He first

1   determined that plaintiff's last date of insured status was

2   December 31, 2019.

3          He then concluded that plaintiff had not engaged in

4   substantial gainful activity since June 27, 2014, the date of

5   his alleged onset of disability.

6          At step two ALJ Fein concluded that plaintiff

7   suffers from severe impairments that impose more than minimal

8   limitations on his ability to perform basic work functions,

9   including a right foot impairment, status post multiple foot

10  surgeries, degenerative joint disease in right foot, and

11  obesity, rejecting the various other impairments that were

12  alleged and noting his reasoning for doing so.  He did note

13  that certain of the impairments, although they were rejected

14  as severe, were accounted for in the residual functional

15  capacity finding.

16         At step three the Administrative Law Judge

17  concluded that plaintiff's conditions do not meet or

18  medically equal any of the listed presumptively disabling

19  impairments and conditions, specifically considering listings

20  1.02 and 1.03, as well as plaintiff's obesity.

21         The Administrative Law Judge concluded that,

22  notwithstanding his impairments and conditions, plaintiff

23  does retain the residual functional capacity to perform

24  sedentary work, and stated specifically he is able to lift

25  and/or carry 10 pounds frequently, sit for six hours in an

1   eight-hour day, and stand and/or walk for two hours in an

2   eight-hour day with normal breaks.  He went on to state that

3   the claimant should never climb ladders, ropes, or scaffolds,

4   or work at unprotected heights.  He is able to occasionally

5   climb stairs and ramps.  He is able to squat, crouch, crawl,

6   kneel, bend and/or stoop occasionally.  He is able to

7   occasionally operate foot controls.  The claimant is able to

8   reach and use his hands for fine and gross manipulations

9   without limitation.

10          Applying that residual functional capacity finding,

11  ALJ Fein concluded at step four that plaintiff is incapable

12  of performing his past relevant work due to the exertional

13  requirements associated with that work.

14          At step five the Administrative Law Judge noted

15  that if plaintiff were capable of performing a full range of

16  sedentary work, Medical/Vocational Guideline, or grid, Rule

17  201.23 would direct a finding of no disability.  Citing

18  Social Security Ruling 96-9p, Administrative Law Judge Fein

19  noted that occasional stooping, as set forth in the residual

20  functional capacity, would not significantly erode the job

21  base upon which the grids are based.  Also noted that

22  limitation on climbing and so forth would not similarly erode

23  the job base.  And, therefore, concluded that he was able to

24  find that the Commissioner had carried his burden at step

25  five through use of the grids without the requirement to

1    elicit testimony from a vocational expert.

2           As you know, the task that I must perform is

3    extremely limited.  I apply a highly deferential standard of

4    review.  I must determine whether correct legal principles

5    were applied and the resulting determination is supported by

6    substantial evidence.

7           In *Brault versus Social Security Administration*

8    *Commissioner*, 683 F.3d 443, a decision from the Second

9    Circuit Court of Appeals issued in 2012, the Court noted that

10   the standard to be applied is rigid and more demanding than

11   even the clearly erroneous standard.  The Court went on to

12   note that the substantial evidence standard means once an ALJ

13   finds facts, those facts can be rejected only if a reasonable

14   factfinder would have to conclude otherwise.  Substantial

15   evidence, of course, is defined as such relevant evidence as

16   a reasonable mind might accept as adequate to support a

17   conclusion.

18          In his challenge to the Commissioner's

19   determination, plaintiff raises three basic contentions.

20          First, he contends that the opinions of two

21   treating sources, Dr. Lemely and Dr. Triana, were improperly

22   considered and not given full weight, and that the

23   Administrative Law Judge failed to cite the appropriate

24   factors in noting what weight was being given to those two

25   opinions.

*Decision - 6/3/2020 - 19-cv-315*                    9

1          Secondly, he challenges the analysis of his

2   subjective complaints, what we used to call the credibility

3   analysis, under SSR 16-3p.

4          And third, he challenges the Administrative Law

5   Judge's reliance on the grids in light of plaintiff's

6   inability to communicate in English and suggests that the

7   testimony of a vocational expert should have been elicited.

8          The first argument that I will address is the

9   treating physician argument.  Undeniably, both Dr. Ted

10  Triana, DO, and Dr. Frederick Lemely, an orthopedic

11  specialist, are treating sources.  They both provided

12  opinions which are more limited than the residual functional

13  capacity found.

14          In one of his opinions from July 15, 2017,

15  Dr. Triana noted that plaintiff can lift and carry less than

16  10 pounds occasionally and less than 10 pounds frequently,

17  walk and/or stand less than two hours in an eight-hour

18  workday.  He also concluded that plaintiff can sit less than

19  six hours in an eight-hour workday, and can never climb,

20  balance, kneel, crouch, or crawl.  That opinion appears at

21  pages 555 through 558 of the Administrative Transcript.

22          Dr. Triana also issued another opinion on

23  employability, at pages 658 and 659, indicating severe

24  limitations in the areas of walking, standing, sitting,

25  lifting, carrying, pushing, pulling, bending, stairs or other

1   climbing.

2          The orthopedic specialist, Dr. Lemely, on July 28,

3   2017 issued an opinion which appears at pages 560 and 562 of

4   the Administrative Transcript, also indicating plaintiff

5   cannot lift and/or carry more than 10 pounds occasionally or

6   frequently, can stand less than two hours in an eight-hour

7   workday, and must periodically alternate sitting and standing

8   to relieve pain.  I note that Dr. Lemely did, at page 540, on

9   March 23, 2016 indicate that plaintiff is capable of

10  performing sedentary work, although he went on to say, "In

11  terms of labor intensive activity, I think he will have

12  significant disability."

13         The opinions of those two are, of course, entitled

14  to considerable deference, and if they are, of course,

15  supported by medically acceptable clinical and laboratory

16  diagnostic techniques and not inconsistent with other

17  substantial evidence.  They are not controlling, however, if

18  they are contrary to other substantial evidence in the

19  record, including opinions of other medical experts.  Where

20  the record includes contradictory medical evidence, the

21  resolution is properly entrusted to the Commissioner.

22         Both the regulations and case law indicate that

23  there are several factors that an Administrative Law Judge

24  must consider if not giving controlling weight to a treating

25  source's opinion.  Those are the so-called *Burgess* Factors,

1   and include:  The length of the treatment relationship and

2   the frequency of examination; the nature and extent of the

3   treatment relationship; the evidence supporting the treating

4   provider's opinion; the degree of consistency between the

5   opinion and the record as a whole; whether the opinion is

6   given by a specialist; and other evidence that has been

7   brought to the attention of the Administrative Law Judge.

8           I have reviewed the Administrative Law Judge's

9   treatment of those two opinions.  They, of course, are vastly

10  different from the opinions given by the consultative

11  examiner, Dr. Ganesh.  Dr. Ganesh's findings are discussed at

12  page 42 of the Administrative Transcript.  Dr. Ganesh found

13  very little limitations, which led the Administrative Law

14  Judge to conclude that it would be given little weight

15  because the plaintiff in the opinion of Administrative Law

16  Judge Fein was more limited than Dr. Ganesh found.

17          Dr. Lemely's opinions are discussed at page 43

18  through 44.  The Administrative Law Judge explained why

19  certain of the limitations set forth in Dr. Lemely's medical

20  source statement were rejected.  Dr. Triana's opinions were

21  given little weight and there was an explanation given at

22  page 44 extending over to the beginning of 45 for that

23  treatment.  Clearly, the Administrative Law Judge did not

24  rotely discuss the *Burgess* factors factor by factor.  I

25  rarely see that, quite frankly.  But as the Second Circuit

1    has noted in *Guerra versus Saul*, 778 F. Appx. 75, a

2    memorandum-decision from October 4, 2019, that remand for

3    traversing the treating physician's rule is not required

4    where a searching review of the record shows that the

5    Administrative Law Judge provided good reasons for his weight

6    assessment.

7          In this case I believe that that is the case and

8    that Administrative Law Judge Fein did explain why he did not

9    accept the opinions of Dr. Triana and Dr. Lemely.

10   Dr. Ganesh, of course, found in her medical source statement,

11   at page 475, no limitations to sitting, standing, or the use

12   of the upper extremities, mild degree of limitation walking

13   and climbing.  The examination reflected, the objective

14   examination from Dr. Ganesh reflected very modest

15   limitations.

16         So the medical source statements were accepted to

17   the extent that plaintiff appears capable of performing

18   sedentary work.  And that appears at page 540 and 551 of the

19   Administrative Transcript, as I just noted.  The

20   Administrative Law Judge also noted plaintiff's ability to

21   perform heavy exertional work up to 2014 before moving out of

22   Puerto Rico to New York.  He did reject the limitations on

23   climbing, balancing, kneeling, crouching and crawling.  Even

24   if that was error, it is harmless error because it is clear

25   under SSR 96-9p that those are not required for sedentary

1    work.

2         In my opinion, the Administrative Law Judge

3    provided good reasons and allows for meaningful judicial

4    review of the treatment of those two treating physicians'

5    opinions.  The Administrative Law Judge also noted

6    Dr. Lemely's opinion on standing and walking, at page 560,

7    which he viewed as inconsistent with sedentary work.  That's

8    at page 43.

9         I think that Administrative Law Judge Fein could

10   have been more explicit in discussing his reasons for

11   rejecting the stand and walk limitations, but when read as a

12   whole, I believe the opinion gives good reasons and

13   especially focuses on plaintiff's ability to work in Puerto

14   Rico in a position where he was literally on his feet all

15   day.

16        The need for a cane was discussed.  Clearly, the

17   cane was prescribed.  The Administrative Law Judge explained

18   at pages 43 and 44 his rejection of the need for a cane,

19   noting that the cane did not appear in any of the treatment

20   notes until after the initial rejection of his application of

21   benefits, and that after that and after he retained counsel,

22   he did appear at his medical appointments using a cane.

23   Again, I think that that discussion is supported by

24   substantial evidence.

25        I don't find any error in rejecting or assigning

1   little weight to Dr. Ganesh.  The case law is clear that the

2   residual functional capacity does not have to track any

3   particular medical source opinion or statement.  In this case

4   Dr. Ganesh's opinions were accepted with respect to some

5   limitations on walking and standing.

6          Dr. Triana's opinions were discussed at 44 and 45,

7   as I indicated, but the Administrative Law Judge noted that

8   treatment records relatively uniformly showed normal gait and

9   there is only a shift when in January of 2015 plaintiff's

10  claim was initially denied.  It is for the Administrative Law

11  Judge to weigh contradictory medical evidence under *Veino*,

12  and the Court is not positioned to reweigh.

13         Turning to analysis of the subjective complaints,

14  obviously that is addressed by SSR 16-3, what we used to call

15  the credibility analysis.  Among the factors to be considered

16  when addressing the claims of subjective pain or other

17  impairments are daily activities; location, duration,

18  frequency, and intensity of pain or other symptoms; factors

19  that precipitate and aggravate the symptoms; the type,

20  dosage, effectiveness and side effects of any medication an

21  individual takes or has taken to alleviate pain or other

22  symptoms; treatment, other than medication, an individual

23  receives or has received for relief of pain or other

24  symptoms; any measures other than treatment an individual

25  uses or has used to relieve pain or other symptoms; and any

1    other factors concerning an individual's functional

2    limitations and restrictions due to pain or other symptoms.

3              In this case the Administrative Law Judge

4    summarized plaintiff's claims at page 41 of the

5    Administrative Transcript.  He noted, and I agree, that the

6    activities of daily living provide some support for rejection

7    of plaintiff's claims.  There is no evidence that a medical

8    condition caused the plaintiff to leave his job in June of

9    2014.  And instead, it appears that it was the result of his

10   decision to move out of Puerto Rico.

11             Again, it was noted that plaintiff was observed to

12   have a normal gait at many of his exams.  Plaintiff at one

13   point stated that he wanted to work.  The plaintiff's claims

14   are not supported by Dr. Ganesh's opinions or the

15   observations during her examination.  They're partially

16   unsupported by Dr. Lemely's use of the cane coming only after

17   the initial denial of the application for benefits and the

18   retention of counsel was a big factor in the determination by

19   the Administrative Law Judge, as well as the exertional

20   requirements of his past work, and the lack of evidence

21   showing such serious deterioration that he would go from a

22   position where he was required to lift 50 pounds frequently

23   to not being able to even handle sedentary work.

24             The findings associated with the plaintiff's claims

25   can only be overturned under *Brault* and its progeny if no

1  reasonable factfinder could conclude how as the

2  Administrative Law Judge did, or put another way, would have

3  to find that a reasonable factfinder would have to accept

4  plaintiff's claims, and I do not find that that test is met.

5           Last argument is the step five determination.

6  Obviously, it is the Commissioner's burden at step five to

7  find the availability of significant work in the national

8  economy that plaintiff is capable of performing

9  notwithstanding his limitations.  In this case, the

10 Administrative Law Judge relied on Grid Rule 201.23.  That

11 rule applies to a younger individual age 18 to 44, which

12 plaintiff is.  It also specifies in terms of education

13 illiterate or unable to communicate in English, and it

14 relates to previous work experience being unskilled and

15 directs a finding of no disability.

16          The text immediately preceding Table 1 indicates

17 that, "The functional capability for a full range of

18 sedentary work represents sufficient numbers of jobs to

19 indicate substantial vocational scope for those individuals

20 age 18 to 44 even if they are illiterate or unable to

21 communicate in English."  The inability to communicate in

22 English is clearly an educational impairment and not a

23 non-exertional impairment.  *Sanchez versus Astrue*, 2010 WL

24 11652386, from the Western District of Texas 2010.  The

25 ability to communicate is addressed in both 20 CFR Section

1   404.1564, as well as 20 CFR Section 416.964.

2          In this case the inability to communicate in

3   English is not a non-exertional impairment that would require

4   the testimony of a vocational expert.  It is a condition that

5   is specifically accounted for in the grids.  Plaintiff has

6   relied on a decision from one of my former colleagues in the

7   Southern District of New York, Magistrate Judge Andrew J.

8   Peck in *Cortes versus Colvin*, 2015 WL 2166111 from 2015.  In

9   that case, however, there was vocational expert testimony,

10  but the vocational expert was not asked what effect

11  illiteracy would have on the ability to perform three

12  specific jobs identified which do require the ability to read

13  and recognize meaning of at least 2,500 English words.  In

14  this case for other reasons there was not a requirement of a

15  vocational expert and the grids were properly relied on.

16         There is also a claim that the postural limitations

17  that should have been imposed would have precluded the

18  ability to perform sedentary work.  And as I previously

19  indicated, under SSR 96-9p those postural limitations would

20  have little effect on the ability to perform sedentary work.

21         In conclusion, I find that the standard under

22  *Brault* was not met by the plaintiff in the challenge of the

23  Administrative Law Judge's treatment of the treating source

24  opinions and subjective complaints.  I conclude that

25  substantial evidence supports the determination and that

1   correct legal principles were applied and, therefore, will

2   grant judgment on the pleadings to the defendant and order

3   dismissal of plaintiff's complaint.

4            Thank you both for excellent presentations and I

5   hope you stay safe in these interesting times.

6                    *              *              *

7

8                    C E R T I F I C A T I O N

9

10           I, EILEEN MCDONOUGH, RPR, CRR, Federal Official

11  Realtime Court Reporter, in and for the United States

12  District Court for the Northern District of New York,

13  do hereby certify that pursuant to Section 753, Title 28,

14  United States Code, that the foregoing is a true and correct

15  transcript of the stenographically reported proceedings held

16  in the above-entitled matter and that the transcript page

17  format is in conformance with the regulations of the

18  Judicial Conference of the United States.

19

20

21

22  _____

23           EILEEN MCDONOUGH, RPR, CRR
             Federal Official Court Reporter

24

25